```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
       - v.-                          :     18 Cr. 146 (JFK)
                                      :     OPINION & ORDER
KAREEM GRAVES, a/k/a "Pook,"          :
RAVON WALKER, a/k/a "Ray," and        :
VERNON WALKER,                        :
                                      :
                       Defendants.    :
-----------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-4-18

APPEARANCES

FOR PLAINTIFFS
   Christopher J. Clore
   Anden Chow
   Assistant United States Attorneys of Counsel

FOR DEFENDANT KAREEM GRAVES
   Mark Gombiner
   FEDERAL DEFENDERS OF NEW YORK INC. (NYC)
FOR DEFENDANT RAVON WALKER
   Jesse M. Siegel
   LAW OFFICE OF JESSE M. SIEGEL
FOR DEFENDANT VERNON WALKER
   Gerald J. DiCiara
   GERALD J. DICHIARA, ESQ.

**JOHN F. KEENAN, United States District Judge:**

On or about February 21, 2018, the Government filed an indictment (the "Indictment") charging the Defendants with (i) participating in a conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; (ii) participating in a conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 and (iii) possessing firearms during and in relation to the

crime charged in Count One and the narcotics conspiracy charged in Count Two, in violation of 18 U.S.C. § 924(c).

Defendants – either through their respective individual motions or by incorporating by reference the motion papers of another Moving Defendant – seek an order, pursuant to Fed. R. Crim. P. 12(b)(3)(B), dismissing Count Three of the Indictment which charged the Defendants with firearms possession, in violation of 18 U.S.C. 924(c), on the grounds that it fails to state an offense.  Additionally, Defendants seek an Order requiring the Government to disclose the identity of the confidential informants.  Finally, Defendants also seek relief related to discovery.

For the reasons below, Defendants' motion to dismiss Count 3 is denied, Defendants' motion for an Order requiring the Government to disclose confidential informants' identities is denied, and the Government is directed to produce all discovery material as directed below.

## **Background**

The case, according to the Government, stems from a Drug Enforcement Administration ("DEA") investigation of an alleged conspiracy to rob a purported heroin trafficker.  During the investigation, DEA agents worked with two paid confidential sources ("CS-1" and "CS-2," collectively, the "Confidential Sources").

The following facts are taken from the Magistrate's Court Complaint. On or about January 10, 2018, the confidential sources met with Kareem Graves ("Graves") and Ravon Walker near 167th Street and Sheridan Avenue in the Bronx. At the meeting, the confidential sources told Graves and Ravon Walker that they knew an individual who transported drugs from Texas to New York on behalf of Mexican drug dealers. The confidential sources offered to tell Graves and Ravon Walker about the next delivery so that they could rob it. The confidential sources also told Graves and Ravon Walker that between approximately 10 and 15 kilograms of heroin would be delivered. Graves and Ravon Walker informed the Confidential Sources that they wanted another meeting to discuss the robbery.

On or about January 24, 2018, the Confidential Sources met with Graves and Ravon Walker in the vicinity of 166th Street and Sheridan Avenue in the Bronx. At this meeting, Graves and Ravon Walker told the Confidential Sources that they, and a third individual (Vernon Walker), were prepared to commit the robbery. The Confidential Sources then introduced Graves and Ravon Walker to a third confidential source ("CS-3"). CS-3 told Graves and Ravon Walker that he was the driver for the individuals from Mexico involved in the transportation of narcotics. Graves and Ravon Walker also inquired about the destination of the drugs so that they could check out the area.

On or about February 1, 2018, the Confidential Sources and CS-3 met with Graves and Ravon Walker near 165th Street and Sherman Avenue in the Bronx. CS-3 told Graves and Ravon Walker that the next narcotics delivery was set for February 6, 2018. CS-3 provided a description of the individuals who would accompany CS-3 during the delivery. On or about February 5, 2018, the Confidential Sources met with Graves and Ravon Walker and the group drove to the vicinity of 218th Street and Broadway in Manhattan to check out the location where the robbery was to take place.

On or about February 6, 2018, at approximately 5 p.m., agents saw the Confidential Sources drive to Third Avenue and Tremont Avenue in the Bronx. Graves entered the car. They then drove to the vicinity of 165th Street and Sherman Avenue. Graves exited the vehicle and met with four individuals on the sidewalk, including Ravon Walker and Vernon Walker. Graves, Ravon Walker, and Vernon Walker then got into the backseat of the car. Inside, Ravon Walker explained to the Confidential Sources that the individual who was supposed to drive them to the robbery was unavailable and asked if they could use the Confidential Sources' vehicle instead. Graves then told the Confidential Sources that he, Ravon Walker, and Vernon Walker would go and get their guns.

Agents saw the Defendants leave the vehicle and go into 1060 Sherman Avenue. The Defendants exited the building and returned to the backseat. One confidential source told Ravon and Vernon Walker to hide the guns in the vehicle's trunk so that law enforcement would not see them if the vehicle was stopped. Two firearms were placed in a hat and put in the trunk of the vehicle. Agents then followed the vehicle to the vicinity of 218th Street and Broadway in Manhattan and arrested the Defendants, all of whom were seated in the back seat of the vehicle.

During the arrest, the agents recovered a Smith & Wesson pistol which was loaded with six .357 caliber bullets and a Taurus gun loaded with eight .40 caliber bullets. Also recovered were four latex gloves from the front pocket of Vernon Walker's jacket; and a black ski mask, black gloves, and a gravity knife from Graves' person.

## **Analysis**

18 U.S.C. 924(c)(1)(A) makes it unlawful for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States" to "use[] or carr[y] a firearm . . . in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) defines a crime of violence as an offense that is a felony and "has as an element the use,

5

attempted use, or threatened use of physical force against the person or property of another," (18 U.S.C. § 924(c)(3)(A) (the "elements/force clause")) or "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B) (the "residual clause").

Defendants request that the Court dismiss Count Three of the Indictment, which charges firearms possession in violation of 18 U.S.C. § 924(c)(1)(A), because the charge is linked to the Hobbs Act robbery conspiracy charged in Count One. Defendants argue that the robbery conspiracy does not qualify as a crime of violence (i) under the elements/force clause because "Hobbs Act robbery can be committed using less than the 'violent force' required to constitute force under this clause"; or (ii) under the residual clause because the clause is unconstitutionally vague.

On April 17, 2018, the Supreme Court decided Sessions v. Dimaya, 138 S. Ct. 1204 (2018), which held that 18 U.S.C. § 16(b) is unconstitutionally vague. Though Dimaya did not directly address the constitutionality of any provision of Section 924(c), Section 16(b) contains identical language to one of the two definitions of a "crime of violence" under Section 924(c)(3), specifically, Section 924(c)(3)(B)'s "residual clause."

Dimaya's impact on Section 924(c)(3)(B) is now at issue in a case pending before the Second Circuit, United States v. Barrett (14-2641-cr). The issue in Barrett, as here, is whether a Hobbs Act robbery conspiracy constitutes a crime of violence under either of Section 924(c)(3)'s subsections. On April 23, 2018, the panel assigned to consider Barrett granted the Government's request to submit a supplemental brief addressing whether Dimaya's analysis of Section 16(b) — and, in particular, its application of the so-called "categorical approach" — applies to Section 924(c)(3)(B)'s residual clause. On May 4, 2018, the Government submitted its supplemental brief in Barrett.

The pendency of the Second Circuit's determination in Barrett, which will affect the merits of the Moving Defendants' claim, weighs in favor of reserving a determination by this Court with respect to whether Hobbs Act robbery qualifies as a crime of violence pending the Second Circuit's decision in Barrett.

However, there is no need to address whether Hobbs Act robbery conspiracy qualifies as a crime of violence on this motion because Count Three of the Indictment is also linked to the narcotics conspiracy charged in Count Two. Section 924(c) prohibits the use, carrying, or possession of a firearm, during or in relation to a "drug trafficking crime." None of the cases

7

relating to whether the count charges a violent crime has anything to do with drug trafficking.

Accordingly, Defendants' motion to dismiss Count Three of the Indictment is denied.

## **Identity of Confidential Informants**

Defendants also seek the identity of the Government's confidential informants.

The Government's ability to withhold an informant's identity has been long established. See Roviaro v. United States, 353 U.S. 53, 59 (1957) (citing cases). Disclosure of the identity of a confidential informant is an "extraordinary remedy." United States v. Muyet, 945 F. Supp. 586, 602 (S.D.N.Y. 1996) (quoting Ortega v. United States, 897 F. Supp. 771, 780 (S.D.N.Y. 1995)). Defendants bear the burden of showing the need for disclosure of an informant's identity and, to do so, must establish that, absent such disclosure, a defendant will be deprived of the right to a fair trial. United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997) (citing Rovario, 353 U.S. at 60-61; United States v. Manley, 632 F.2d 978, 985 (2d Cir. 1980)). "[D]isclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). In United States v. Russotti, the Circuit observed "[i]t has

8

consistently been held that an informant's identity need not be disclosed unless 'essential to the defense.'" 746 F.2d 945, 949-50 (2d Cir. 1984) (quoting Scher v. United States, 305 U.S. 251, 256 (1938)). Maintaining the confidentiality of an informant's identity furthers and protects "the public interest in effective law enforcement." Roviaro, 353 U.S. at 59.

Showing that the informant was a participant in and witness to the crime charged, as urged by counsel for Graves, is not enough. Saa, 859 F. 2d at 1073 (citing United States v. Jimenez, 789 F. 2d 167, 170 (2d Cir. 1986)). Here, Defendants fail to make a showing that the confidential source's participation in and witnessing of the crime charged warrants disclosure of the source's identity at this time. Defendants' suggestion that an entrapment defense changes the picture is not enough. There are tape recordings of meetings between Defendants. Although the recordings may be of poor quality, as urged by Graves, they can be enhanced if necessary.

However, out of an excess of caution the court rules as follows: if the Government intends to call any of the Confidential Sources as witnesses at trial, the Government shall furnish to the Defendants all impeachment materials on the Confidential Source to be called at least three trial days before that witness is to testify. This obviously includes the

criminal record of the witness and material as to his or her prior work as a source or informant for the Government.

### **Brady/Giglio/404(b) Materials**

Defendants also seek orders requiring the disclosure of Brady and Giglio materials and prior bad acts. Should the government become aware of any Brady material, it should be produced as soon as it is discovered.

With respect to Giglio, the Government shall provide all such material concerning its witnesses three full trial days before the witness is to testify.

With respect to evidence of other crimes, wrongs, or bad acts under Federal Rule of Evidence 404(b), the Government shall provide such evidence two weeks in advance of trial. Fed. R. Evid. 404(b)(2).

### **Conclusion**

For the reasons stated above, Defendants' motion to dismiss Count 3 is DENIED. The Defendants' motion for an order requiring the Government to disclose the identity of its confidential sources is DENIED, but – should this case go to trial – the Government shall comply with the Court's above directives. Finally, the Government is directed to produce evidence in line with the above directives.

The Clerk of Court is respectfully directed to terminate the motions docketed at ECF Nos. 35, 37, and 43.

**SO ORDERED.**

Dated:   New York, New York
         September 4, 2018

_____
John F. Keenan
United States District Judge