```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
     -against-                        :        No. 18 Cr. 146 (JFK)
                                      :
KAREEM GRAVES,                        :        OPINION & ORDER
                                      :
                      Defendant.      :
-------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/14/2020

APPEARANCES

FOR DEFENDANT KAREEM GRAVES:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Anden Chow
    Christopher Clore
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a pro se motion by Defendant Kareem Graves seeking a sentence reduction due to Graves's preexisting medical conditions and the COVID-19 pandemic. Graves brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute. The Government opposes Graves's motion as substantively meritless because Graves's medical conditions, the circumstances of his incarceration, and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to his term of imprisonment. For the reasons set forth below, Graves's motion is DENIED.

1

**I. Background**

Unless otherwise noted, the following is taken from the materials the parties submitted, Graves's Presentence Investigation Report ("PSR"), (ECF No. 63), and the transcripts of Graves's plea and sentencing, (ECF Nos. 54, 81). In ruling on Graves's compassionate release request, the Court has considered the arguments advanced in Graves's pro se motion (filed under seal), the Government's opposition, (ECF No. 98), and Graves's letter in reply, (ECF No. 99). While the motion was pending, Graves mailed two additional letters to the Court providing information about the conditions of his incarceration at FCI Allenwood Medium in White Deer, Pennsylvania.

On September 12, 2018, Graves pleaded guilty, pursuant to a plea agreement, to one count of conspiring to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. The charges stemmed from Graves's participation in a conspiracy to rob an individual whom Graves was told—by confidential sources ("the CSs") working with the Drug Enforcement Administration—would be transporting a significant quantity of heroin from Texas to New York. (PSR ¶ 13.) At various meetings with the CSs, Graves and certain other individuals agreed to carry out the robbery, and on February 6, 2018, he and two co-defendants, met with the CSs, retrieved guns from a nearby building, and drove with the CSs to the area where they planned to conduct the robbery. (Id. ¶ 14-18.) When

Graves and the others arrived, however, he and his two co-defendants were placed under arrest.  (Id. ¶ 19.)  A search of the trunk of their vehicle yielded two loaded firearms.  (Id.)  Law enforcement also recovered a black ski mask, black gloves, and a gravity knife from Graves's person.  (Id.)  During his plea allocution, Graves admitted to agreeing with others to commit the robbery and that he knew it was wrong and illegal.  (Plea Tr. at 14:13–15:21.)

Graves's sentencing occurred on January 8, 2019, during which he described his deep regret as well as his struggles to financially provide for his family at the time of the offense.  (Sent. Tr. at 12:22–13:18.)  Graves petitioned the Court for a below Guidelines sentence of 36 months; the Government argued in favor of a Guidelines sentence.  As part of the plea agreement Graves signed, he and the Government agreed that his offense conduct resulted in a Guidelines range of 57 to 71 months' incarceration, and the Government agreed to dismiss the two other counts against Graves for conspiring to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. § 846; and possessing a firearm in connection with the above conspiracies, in violation of 18 U.S.C. §§ 924(c) and 2.

At sentencing, the Court found a Guidelines incarceration range of 51 months to 63 months.  (Sent. Tr. at 15:1–10.)  The

Court took note of Graves's offense conduct, which did not involve any actual narcotics—but did involve guns—as well as Graves's exceptionally challenging childhood, his supportive family and young children, and the serious medical issues he faced after being shot 13 times in an earlier, unrelated event. (Id. at 13:21-15:16; 17:21-19:25.)  The Court concluded that a downward variance was appropriate and sentenced Graves to 42 months' imprisonment along with three years of supervised release.  (Id. at 15:11-16:9.)  In doing so, the Court explained that "[s]entencing is really the most important thing that a federal judge does . . . [a]nd in your case I really did give this a lot of thought, because you've got a bad record."  (Id. at 17:25-18:4.)  Nevertheless, the Court explained that the downward variance was appropriate because "besides the fact that you are suffering from these gunshots is the fact that you do seem to me to be working to try and improve yourself."  (Id. at 18:16-19.)  To date, Graves has served approximately 32 months of his sentence.  He is scheduled for release on February 25, 2021.

On July 2, 2020, Graves, proceeding pro se, filed a motion requesting a reduction in sentence and his immediate compassionate release due to the COVID-19 pandemic.  Graves's motion explained that he suffered from a variety of medical conditions, including asthma, high blood pressure, and issues

4

relating to his gunshot wounds, and he was deeply worried about his health should he contract the virus. The Court ordered the Government to respond, and on July 13, 2020, the Government opposed Graves's request on the grounds that no compelling and extraordinary reasons support his release which, in any event, would be inappropriate under the sentencing factors set forth in 18 U.S.C. § 3553(a). (ECF No. 98.) Graves submitted a reply letter on July 23, 2020. (ECF No. 99.)

## II. Discussion

### A. Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i). In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would

5

undermine the goals of the original sentence.'" United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

The Second Circuit recently ruled that the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "is not 'applicable' to compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, --- F.3d ---, No. 19-3218-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). Accordingly,

> when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by [§] 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."

United States v. Harris, No. 15 Cr. 445 (PAE), 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020) (footnote and internal citations omitted). "[P]ro se litigants generally are entitled to a

6

liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

### B.  Analysis

The Court is sympathetic to the heightened risk certain individuals face from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited October 13, 2020); see also United States v. Park, --- F. Supp. 3d ---, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources).  And, on at least one occasion, it has ruled that the threat posed by the COVID-19 pandemic to a medically "high-risk" individual constitutes "extraordinary and compelling reasons" to warrant immediate compassionate release. See United States v. Smith, 454 F. Supp. 3d 310, 315 (S.D.N.Y. 2020) (granting release to non-violent 62-year-old who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); but see United States v. Mascuzzio, No. 16 Cr. 576

(JFK), 2020 WL 3050549, at *3–*4 (S.D.N.Y. June 8, 2020) (denying release to non-violent 40-year-old despite his medical conditions); United States v. Kerrigan, No. 16 Cr. 576 (JFK), 2020 WL 2488269, at *3–*4 (S.D.N.Y. May 14, 2020) (same for non-violent 43-year-old).

Nevertheless, after considering the 3553(a) factors, the Court is not persuaded that extraordinary and compelling reasons exist to reduce Graves's sentence and order his immediate release. Accordingly, Graves's motion is denied.

First, Graves has failed to articulate an extraordinary and compelling reason why his sentence should be reduced. The foundation of Graves's motion is the generalized threat COVID-19 poses to incarcerated individuals with underlying medical conditions. Indeed, according to the Centers for Disease Control and Prevention ("the CDC"), older adults and people of any age who have serious underlying medical conditions may be at higher risk for a severe illness from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, supra. Here, however, Graves's age, asthma, high blood pressure, and nerve and muscle damage are not severe enough to warrant compassionate release. Graves is 43, significantly younger than the CDC's former high-risk cutoff age of 65. See id.; see also, e.g., United States v. Skelos, No. 15 Cr. 317 (KMW), 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020) ("Defendant has not

8

demonstrated the existence of extraordinary and compelling circumstances in his case.  Defendant is 37 years old, and thus faces a relatively low risk of hospitalization or death from COVID-19.") (collecting sources).  While the CDC has listed "moderate to severe asthma" as a potential risk factor for a severe illness from COVID-19, here, Graves's asthma cannot be characterized as such: according to his Bureau of Prisons medical records, Graves only reports having had a history of "mild asthma with occasional symptoms . . . but [he] has not had symptoms in over 3 years so asthma diagnosis was resolved." (Ex. to Gov't's Opp'n at 4.)  Further, although Graves's gunshot wounds are serious, they do not rise to the level of COVID-19 risk factors looked to by the CDC and courts, such as pulmonary hypertension (a specific and rare type of hypertension affecting the lungs and right side of the heart), cancer, diabetes, or immunocompromization. See, e.g., Park, 2020 WL 1970603, at *6 (granting release to 44-year-old with a documented history of respiratory issues, including severe asthma and immune-compromising diseases); United States v. Williams, --- F. Supp. 3d ---, No. 17 Cr. 121 (VAB), 2020 WL 1974372, at *5 (D. Conn. Apr. 24, 2020) (granting release to defendant with chronic asthma, hypertension, diabetes, and high cholesterol); Smith, 454 F. Supp. 3d at 315; but see, e.g., United States v. Mood, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16,

2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication"); Kerrigan, 2020 WL 2488269, at *3 (denying release to 43-year-old with obesity and liver disease); United States v. Aronshtein, No. 11 Cr. 121 (GBD), 2020 WL 2836770, at *2 (S.D.N.Y. June 1, 2020) (denying release to defendant with asthma).

Second, and decisive here, even if Graves's age, health risks, and the COVID-19 pandemic could provide extraordinary and compelling reasons for a sentence reduction, application of the 3553(a) factors cripples his request and outweighs any justification for early-release. Here, the factors that weigh in Graves's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). For the reasons stated in detail at Graves's sentencing, which are incorporated by reference here, the Court finds that modifying Graves's significantly below-Guidelines

10

term of incarceration would disserve the above important sentencing factors. Accordingly, Graves's motion is denied. <u>Cf. Mascuzzio</u>, 2020 WL 3050549, at *4; <u>Kerrigan</u>, 2020 WL 2488269, at *4.

**III. Conclusion**

For the reasons set forth above, Defendant Kareem Graves's motion for a reduction in sentence is DENIED.

**SO ORDERED.**

Dated:  New York, New York
        October 14, 2020

_____
John F. Keenan
United States District Judge